Day, J.
The petition alleges that, on the '2d day of July, 1865, one Anthony Eobinson, being the owner, in fee simple, of the south-west quarter of the south-east quarter of section Y, township 8Y, range 6, west, died intestate, leaving a widow, the defendant Libbie Gould, and Eobert James Eobinson, a minor, as his only heirs at law,
*179 That, about tbe 1st day of September, 1865, said Robert James Robinson died intestate, leaving as bis only beir at law tbe said defendant Libbie Gould.
That, on tbe 9th day of January, 1866, tbe defendant Libbie Gould (then Robinson), and S. C. Bowen, administrator of tbe estate of Antbony Robinson, entered into a written contract with plaintiffs, of wbicb tbe following is a copy, to wit:
“ This agreement, made and entered into this 9th day of January, A. D. 1866, between Robert Robinson and Johnston Robinson, of Delaware county, State of Iowa, of tbe first part, and Libbie Robinson, widow of Antbony Robinson, deceased, and Sanford O. Bowen, administrator of said deceased, of tbe second' part, witnesseth: That whereas tbe said parties of tbe second part claim of Robert Robinson, of tbe first part, a share of tbe personal property held by him and tbe said deceased, on the farm and premises occupied by them in said county, previous to said Anthony’s death; and also, said Libbie Gould claims an interest in tbe real estate occupied by said parties previous to tbe death of said Antbony.
“Now, in order to settle all matters between said parties, it is hereby agreed that tbe said parties of tbe first part shall pay to tbe said Libbie Robinson, party of tbe second part, tbe sum of $1,000, $200 of wbicb is to be paid within fourteen days from tbe date hereof, and tbe remaining $800 on or before tbe 1st day of April, A. D. 1867, and both sums to be secured by tbe promissory notes of tbe parties of tbe first part, bearing interest at tbe rate of eight per cent per annum, payable annually, and secured by mortgage on real estate that shall be ample security for tbe same. And tbe said parties of tbe first part'are to pay all debts and demands against tbe said Antbony Robinson, deceased, now outstanding and unpaid, except amounts still due Drs. Morse, Acers and Whitney, for attendance on said deceased during bis last sickness, wbicb tbe parties of *180 the second part are to pay; and the parties of the first part are to pay all taxes on the land and personal estate held by said deceased and Bob.ert Bobinson previous to said Anthony’s death.
And the said parties of the second part, in consideration of the payment of the said amount aforesaid, and to be received as aforesaid, hereby release and relinquish all claims and demands against the said Bobert Bobinson, and also against the personal and real property now held and possessed by said Bobert, or heretofore held and possessed by said Anthony Bobinson, deceased, or by him and the said Bobert jointly, or otherwise, except only such part of the personal property as is now in the possession of the parties of the second part, or of either of them, which they are to retain; provided, that said notes and mortgage above specified shall be ^executed and delivered on or before the 11th day of January, 1866, or the parties of the second part may, at their option, declare this agreement to be terminated, and proceed the same as though the same had never been entered into. In witness whereof, the parties hereto set their hands, this the day and year above mentioned.”
The petition further states that the said plaintiffs have complied with all the terms of said contract on their part. That defendants mate some claim adverse to the title of plaintiffs in said premises. The prayer is that said defendants be debarred and estopped from having or claiming any right or title adverse to the plaintiffs.
To this petition the defendants filed a demurrer, setting up the following grounds:
1. That the contract, which is made a part of said petition, and is the only ground on which the action is based, does not convey, nor purport to convey, the land in controversy, which was, at the time of the execution of said contract, owned by Libbie Gould, to the plaintiffs, or either of them.
*181 2. That said contract shows, upon its face, that Libbie Gould relinquished to Robert Robinson some equitable interest which she claimed to have as heir at law, in the farm and premises occupied by said Robert Robinson and Anthony Robinson, previous to the death of her husband Anthony.
3. Said contract shows, upon its face, that it was to settle such equitable claims (disputed by Robert Robinson), as she made as heir at law of Anthony, in and to the real estate occupied by Robert and Anthony Robinson.
A That said contract does not convey, or purport to convey, any land to the plaintiffs, or either of them, of which she was the absolute owner.
5. That said petition does not show that said plaintiffs, or either of them, were in the occupancy or possession of the land in controversy, either separately or jointly with Anthony, at the time of his decease.
The sustaining of this demurrer is the error assigned.
It is urged that this contract does not convey any interest to which Libbie Gould succeeded in the lands of her late husband which were possessed and occupied by him solely; that it conveys simply her equitable interest in lands owned by her husband and Robert Robinson jointly, and the title to which was in Robert. This is not the spontaneous and natural construction of this agreement. It is forced and artificial. It would not likely suggest itself to the mind of any one from a consideration of the contract alone. The objects, upon which this contract is to operate, are described with great particularity. It releases, first, all claims and demands against the said Robert Robinson; second, and also against the personal and real property now held and possessed by said Robert; third, or heretofore held cmd possessed by scdd Anthowy Bobmson deceased; fourth, or by him and the said Robert, jointly or otherwise.
This language would seem to be broad enough to convey *182 every interest to which the widow succeeded in property owned by her husband, at the time of his death. That it was intended to do so, receives support from the reservation which follows: “ Except only such part of the personal property as is now in the possession of the parties of the second part, or either of them, which they are to retain.” How does it happen that, when the attention of these parties was challenged to the business of making reservations from this contract, they provide for the personal property in their possession, but remain silent with regard to this realty? In our opinion, such conduct can be explained only upon the theory, that it was the intention to include this property in the agreement. Expressio uwrns est exeVusio alterius. Our present business is simply to place a construction upon this contract. If it has been procured through fraud, or entered into in mistake of a material fact, equity will afford relief, not by placing a construction upon „ it which its terms do not warrant, but by relieving from the force and effect of its terms. Or, if circumstances dehors the instrument create a latent ambiguity, this may be explained by parol testimony, and the intention of the parties, thus discovered, may be enforced. But, looking to the instrument alone, we cannot adopt the construction claimed by appellee, and recognized by the court below.
It is hinted in the argument, though not urged with apparent confidence, that the instrument does not operate as a conveyance.
As between the parties to it, we think it has the effect of a quitclaim of the interest of defendants.
The judgment of the district court is
Reversed.